A97A2416. HARKLEROAD et al. v. STRINGER et al.
A97A2417. MORRIS, MANNING & MARTIN et al.
v. HARKLEROAD et al.
A97A2418. MORRIS, MANNING & MARTIN et al.
v. HARKLEROAD et al.
(499 SE2d 379)

BEASLEY, Judge.

These cases have been before this Court on two prior occasions: *Stringer v. Harkleroad & Hermance*[1] ("*Stringer*"); *Harkleroad & Hermance v. Stringer*[2] ("*Harkleroad*").

The main appeal, Case No. A97A2416, concerns whether the law firm of Harkleroad & Hermance and its president Donald Harkleroad (appellants/cross-appellees: collectively "the Harkleroad litigants") may be awarded attorney fees under OCGA § 9-15-14 for legal services provided to themselves in this litigation. In the cross-appeals, Case Nos. A97A2417 and A97A2418, the law firm of Morris, Manning & Martin and its attorneys Joseph R. Manning, Anthony E. DiResta, and George T. Hibbs (appellees/cross-appellants, "the Morris, Manning attorneys") challenge the award of sanctions to Harkleroad & Hermance's outside counsel, the law firm of Schwall & Ruff and its attorney Emory Schwall ("Schwall").

---

[24] (Emphasis supplied.) *Rush v. Farmers &c. Bank*, 162 Ga. App. 65 (290 SE2d 164) (1982).

[1] 218 Ga. App. 701 (463 SE2d 152) (1995).

[2] 220 Ga. App. 906 (472 SE2d 308) (1996).

This litigation began when Harkleroad & Hermance filed a complaint against W. Kenneth Stringer III and his company, Monarch Capital Group, for nonpayment of bills for legal services. Although Schwall represented it, Harkleroad & Hermance was primarily responsible for providing support legal services. Stringer and Monarch were represented by the Morris, Manning attorneys. As a result of numerous counterclaims filed by Stringer and Monarch, Donald Harkleroad was added as a counterclaim defendant. With respect to claims against him personally, Harkleroad represented himself as counsel of record during most of the litigation.

By agreement of the parties, the case was arbitrated, and the Harkleroad litigants were awarded $488,663 plus interest. The Morris, Manning attorneys filed a notice of appeal from the award on behalf of Stringer and Monarch, but then withdrew from the case.

We affirmed the award in *Stringer* and granted the Harkleroad litigants' OCGA § 5-6-6 motion for sanctions for frivolous appeal (ten percent of judgment), noting that "[w]hat was a fairly routine collection case on a delinquent account spiralled into vituperative and vitriolic litigation."[3]

Several months after judgment was entered on the award, the trial court denied Harkleroad & Hermance's motion for OCGA § 9-15-14 sanctions against Stringer, Monarch, and the Morris, Manning attorneys. We reversed that decision in *Harkleroad* but did not address the issues in the appeal as they related to Stringer, because he had filed a federal bankruptcy petition and was thus entitled to a stay of the proceedings.[4]

We held that under OCGA § 9-15-14 (a) the trial court's decision denying appellants' motion was not supported by the evidence, for the record showed the counterclaims were without factual or legal support; there was an absence of evidence supporting defenses; an expert who had prepared an OCGA § 9-11-9.1 affidavit had disavowed the opinions stated in the affidavit and disclaimed any real awareness of the matters stated in it; and there were attempts to assert claims barred by the statute of limitation on the ground the statute had been tolled by fraud, but no evidence of fraud was produced.[5] An abuse of its discretion was found by the trial court's failure to make an award under OCGA § 9-15-14 (b) because of the tactics employed to delay disposition and to harass and expand the proceedings.[6]

The case was remanded "to determine what award, if any, should

---

[3] *Stringer*, supra at 704 (2).
[4] *Harkleroad*, supra at 907 (1).
[5] Id. at 908 (3) (a).
[6] Id. at 909 (3) (b).

be assessed against which of the appellees under OCGA § 9-15-14 (a) or (b) for their roles in this litigation."[7] Upon remand the court had express authority to consider evidence as it deemed appropriate on the reasonableness of and necessity for the fees and expenses of litigation.[8]

When the court again took up the case, it did not address issues relating to Monarch, because it had been administratively dissolved before judgment was entered, but it nevertheless entered judgment against Monarch. At the hearing after remand, the Morris, Manning attorneys sought to show, contrary to this Court's holdings in *Harkleroad*, that their litigation tactics were not sanctionable. The court allowed them to make a proffer of evidence and held it was bound by this Court's decision.

Following the hearing, the court entered an order awarding $129,842.17 in attorney fees and expenses incurred by Schwall and expenses incurred by appellants, but no sanctions against George Hibbs individually due to lack of evidence of any sanctionable conduct by him. The court denied Harkleroad & Hermance's request for $329,920 in attorney fees for the firm's and Donald Harkleroad's own legal services, reasoning that *Moore v. Harris*,[9] and *Tandy Corp. v. McCrimmon*,[10] bar such an award. *Moore* was cited as authority for the proposition that activities undertaken by a party in support of the hired counsel's representation, even though the party is a law firm, are not a compensable component in an award of attorney fees. *McCrimmon* was cited as authority for the view that, to be compensable, attorney fees must be charges for professional services rendered by another.

The Harkleroad litigants filed notice of the main appeal after our grant of their application for discretionary appeal. Divisions 1 through 4 address their enumerations of error. The remaining divisions address the enumerations in the Morris, Manning attorneys' cross-appeals.

1. The Harkleroad firm and Harkleroad argue that the court's reliance on *Moore* and *Tandy Corp.* was misplaced.

In *Moore*, a law firm and its two lawyers were sued for legal malpractice. They were represented by other attorneys. After being granted summary judgment, they obtained an award of sanctions under OCGA § 9-15-14. The sanctioned defendants appealed, raising as error the inclusion in the award of the attorneys "professional

---

[7] Id. at 909 (3) (d).
[8] Id. at 909 (3) (c).
[9] 201 Ga. App. 248 (410 SE2d 804) (1991).
[10] 183 Ga. App. 744 (360 SE2d 70) (1987).

time" spent in the defense of the case.[11] It was noted that the attorneys were not counsel of record and that documentation submitted to support their claim included time spent by one of them in giving his own deposition.[12] *Moore* held that the "personal time" spent by attorneys in their own defense is not a compensable component of an award of attorney fees.[13] This portion of the award was reversed and the case was remanded to the trial court to fashion a revised award.[14]

In *Tandy*, a pro se plaintiff who was also an attorney obtained an award of attorney fees based on defendant's failure to comply with a discovery order. The award was based on OCGA § 9-11-37 (b) (2), which authorizes the court to require a party to pay "reasonable expenses, including attorney fees" caused by such party's failure to obey a discovery order. This Court held, in a majority decision, that it was without jurisdiction in that case to consider the issue of whether an attorney representing himself is authorized to collect attorney fees pursuant to OCGA § 9-11-37 (b) (2), because this ground for the award was not enumerated as error.[15]

Thus, in *Tandy* the majority did not reach the issue presented here, and the instant case is distinguishable from *Moore*. Unlike *Moore*, the attorneys here are seeking reimbursement for time and expertise spent doing legal work and not for time spent and knowledge conveyed in the capacity of a client.[16] Moreover, unlike the discovery statute in *Tandy*, the abusive litigation statute provides for an award of "reasonable and necessary attorney's fees and expenses of litigation," does not categorize attorney fees as an expense, and thus does not require the prevailing party to incur a monetary obligation to another.[17]

The absence of such a requirement is consistent with the purpose of the statute, which is to deter litigation abuses by requiring the responsible party or attorney to pay the opposing parties' attorney fees and litigation expenses.[18] Given this intent, "one cannot con-

---

[11] *Moore*, supra at 250 (3).

[12] Id. at 250-251.

[13] Id. at 251.

[14] Id.

[15] *Tandy*, supra at 746 (3).

[16] See *Pratt & Whitney Canada, Inc. v. Sheehan*, 852 P2d 1173, 1181 (4) (Alaska 1993) (prevailing party appearing pro se can receive attorney fees for time expended as an attorney active in the litigation, but not for time expended as a client).

[17] Compare OCGA § 13-6-11; *Steele v. Russell*, 262 Ga. 651, n. 1 (424 SE2d 272) (1993). OCGA § 13-6-11 authorizes the recovery of the expenses of litigation by the plaintiff where the defendant has acted in bad faith, been stubbornly litigious, or caused the plaintiff unnecessary trouble and expense. *Steele* noted that "expenses of litigation" refers to the costs of the action as well as attorney fees. *Steele* does not hold that attorney fees must always be classified as a litigation "expense."

[18] *Dixon v. Home Indem. Co.*, 206 Ga. App. 623, 624 (1) (426 SE2d 381) (1992).

ceive of a reason why the Legislature would distinguish between *pro se* litigants and those represented by an attorney. Why should the prosecutor of a frivolous [litigation] claim be let off the hook simply because the victim of the litigation represented himself? How is the purpose of deterrence less served by compelling the offending party to make payment to a *pro se* party?"[19]

In addition, appellants persuasively argue that they decided to render support legal services, rather than have outside attorneys perform these tasks, because their familiarity with the case would enable them to spend less hours on it and thereby reduce costs.[20] If they expended the same or less professional time, coupled with the same knowledge and experience, as other attorneys employed by them would have been compelled to do, it should make no difference to appellees whether the fees are to be paid for appellants' services rather than those of another attorney employed by them.[21] Minimizing attorney fees rather than increasing them by the unnecessary employment of other attorneys should be encouraged, not penalized.

Cases relied on by the Morris, Manning attorneys which deny attorney fees to pro se litigants under 42 USC § 1988 and the Freedom of Information Act (FOIA) are also distinguishable. Those statutes categorize attorney fees as part of the litigation costs incurred by the prevailing party,[22] and the policy of those statutes is to encourage litigants to retain independent counsel.[23] Also distinguishable are cases denying attorney fees to pro se litigants who are not attorneys because of the lack of any meaningful standard for calculating the amount of the award.[24] This concern is absent where, as here, the litigant is an attorney.[25]

The court thus erred in denying Harkleroad & Hermance's request for attorney fees for legal services rendered by the firm and Donald Harkleroad on the ground that an award of such fees is not authorized under OCGA § 9-15-14.

2. The Harkleroad litigants complain of the court's exclusion of fees of attorneys not present to testify as based on hearsay testi-

---

[19] *Deutch & Shur, P.C. v. Roth*, 663 A2d 1373, 1377 (5) (N.J. Super. 1995).

[20] See *Leen v. Demopolis*, 815 P2d 269, 277 (18) (Wash. App. 1991).

[21] See *Weaver v. Laub*, 574 P2d 609, 611 (2) (Okla. 1978); *McClung v. Posey*, 514 S2d 1139, 1140 (Fla. App. 1987).

[22] See *Cunningham v. Federal Bureau of Investigation*, 664 F2d 383, 385 (2) (3rd Cir. 1981) (FOIA); *Pitts v. Vaughn*, 679 F2d 311, 312 (2) (3rd Cir. 1982) (42 USCA § 1988).

[23] See *Kay v. Ehrler*, 499 U. S. 432, 436 (111 SC 1435, 113 LE2d 486) (1991) (42 USCA § 1988); *Wolfel v. United States*, 711 F2d 66, 68 (3) (6th Cir. 1983) (FOIA).

[24] *Crooker v. United States Dept. of Justice*, 632 F2d 916, 921 (2) (1st Cir. 1980).

[25] See *Cazalas v. United States Dept. of Justice*, 709 F2d 1051, 1057 (4) (5th Cir. 1983). We do not decide the question of whether pro se litigants who are not attorneys may recover attorney fees under OCGA § 9-15-14, as it is not before us. We simply note that there is a rational basis for distinguishing such parties from litigants who are attorneys.

mony, in that such testimony was admissible as a hearsay exception under the Georgia Business Records Act.

This enumeration is not supported by specific reference to the record or transcript. "In the absence of such reference, the Court will not search for or consider such enumeration."[26]

3. They next cite as error the court's failure to award prejudgment interest under OCGA § 7-4-15 for the attorney fees and expenses of Schwall and Harkleroad & Hermance.

OCGA § 7-4-15 imposes liability for prejudgment interest on all demands which are liquidated, "i.e., certain and fixed, 'a sum which cannot be changed by the proof.' [Cit.]"[27] " 'Amount claimed is a "liquidated demand" if it is susceptible of being made certain in amount by mathematical calculations from factors which are or ought to be in possession or knowledge of (the) party to be charged.' Black's Law Dictionary, (4th Ed.) p. 1080."[28] Obviously, a party to a lawsuit does not have sufficient facts within his or her knowledge to render certain the amount of attorney fees and litigation expenses incurred by an adverse party. Moreover, "in assessing attorney fees against a party or the party's attorney pursuant to OCGA § 9-15-14, the trial judge must make an independent determination concerning the reasonableness and necessity of the fees. [Cit.]"[29] Consequently, an award of attorney fees and litigation expenses is not liquidated until reduced to judgment and cannot support an award of prejudgment interest under OCGA § 7-4-15.[30]

4. Finally, the Harkleroad litigants contend that the court erred in ruling that in attorney Hibbs' individual capacity he is not liable for sanctions.

The citations to the record given in support of this enumeration do not show the existence of any sanctionable conduct by Hibbs.

5. We turn now to the cross-appeals of the Morris, Manning attorneys. Based on a number of arguments, they contend the trial court erred in holding that it was bound by this Court's decision in *Harkleroad*.

(a) Cross-appellants suggest that in *Harkleroad* we engaged in unauthorized appellate factfinding, and that prior to the hearing on remand they did not have an opportunity to present evidence rebutting the opponents' claims that their conduct was sanctionable.

The standard of review for OCGA § 9-15-14 (a) is the "any evi-

---

[26] Court of Appeals Rule 27 (c) (3) (i).

[27] *Marathon Oil Co. v. Hollis*, 167 Ga. App. 48, 51 (3) (305 SE2d 864) (1983).

[28] *Intercompany Svcs. Corp. v. Kleeb*, 140 Ga. App. 512, 513 (4) (231 SE2d 505) (1976).

[29] *Duncan v. Cropsey*, 210 Ga. App. 814, 816 (2) (437 SE2d 787) (1993).

[30] See *American Family Life Assurance Co. &c. v. United States Fire Co.*, 885 F2d 826, 835 (18) (11th Cir. 1989).

dence" rule.[31] It requires the appellate court to determine, on the basis of the record developed in the trial court, whether the evidence is sufficient to support the trial court's decision to award or refuse to award sanctions. *Harkleroad* held that the evidence did not support the refusal to award sanctions because the record established sanctionable conduct in numerous regards. The Morris, Manning attorneys' desire to litigate these issues should have been advanced in the course of *Harkleroad*. After *Harkleroad* became final, the holdings as to the evidence became binding as the law of the case. OCGA § 9-11-60 (h).

(b) The contention that the "law of the case" rule did not bar relitigation of these issues because of a change in the evidentiary posture is not valid.

The rule set forth in OCGA § 9-11-60 (h) is that "any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be." But "[a]ppellate court holdings as to pleadings and evidence are not binding as the law of the case, where the evidentiary posture of the case in the trial court changes subsequent to the appellate court decision. [Cit.]" *May v. Macioce*.[32]

*MOM Corp. v. Chattahoochee Bank*[33] concerned the permissibility of changing the evidentiary posture of the case on remand following the appellate court's reversal of the trial court's grant of summary judgment. The Court held that following appellate review of summary judgment, the law of the case rule does not limit or prohibit the trial court from receiving new evidence which changes the evidentiary posture. Jumping the gun in an effort to win summary judgment does not preclude a later attempt when more evidence is gathered.

Similarly, *May* held that the law of the case rule did not prohibit a verdict in favor of plaintiff on a theory of recovery contained in an amended complaint, following appellate reversal of summary judgment to plaintiff due to lack of evidentiary support for the allegations in the original complaint.

*Harrison v. Dorsey*[34] and *Lee v. Dept. of Transp.*[35] recognized that the evidentiary posture of a case may change where the judgment is reversed and the case remanded for a new trial. *Lee* reversed a jury verdict for the condemnee because of the trial court's erroneous

---

[31] *Haggard v. Bd. of Regents*, 257 Ga. 524, 527 (4) (c) (360 SE2d 566) (1987).
[32] 200 Ga. App. 542, 544 (2) (409 SE2d 45) (1991).
[33] 203 Ga. App. 847 (1) (418 SE2d 74) (1992).
[34] 184 Ga. App. 870, 871 (1) (363 SE2d 151) (1987).
[35] 198 Ga. App. 716 (402 SE2d 551) (1991).

exclusion of evidence relating to consequential damages. On appeal from judgment entered following retrial before a judge, the condemnee argued that the trial court violated the law of the case rule by making findings and conclusions at odds with the court's previous decision. We rejected this argument, noting that the prior decision made no determination as to damages, but held only that the trial court had erroneously excluded this evidence. Obviously, if there was no possibility of a different finding of fact with that evidence included, erroneous exclusion would be deemed harmless and a new trial useless.

Unlike the situation in *Lee*, this Court did make a determination in *Harkleroad* that the evidence demanded a finding that sanctionable conduct had occurred. That issue was resolved. The case was remanded so the trial court could determine the remaining issues of the reasonableness and necessity of the requested fees and expenses and what award, if any, should be assessed against which of the sanctioned defendants.

At the remand hearing, the Morris, Manning attorneys challenged the reasonableness and necessity of fees claimed by the Harkleroad firm and Harkleroad, but the court did not resolve the challenge because it denied those fees on grounds reviewed in Division 1. The Morris, Manning attorneys also objected to Schwall's affidavits in support of his claim for fees and expenses to the extent they contained time entries made by other parties. They have not enumerated as error any ruling by the trial court on this objection, nor do they show that the sanctionable conduct identified in *Harkleroad* was attributable to their clients rather than to themselves, as they could have done. Actually, such an assertion would have had little chance of success, as the conduct is the type attributable to counsel. The trial court properly ruled that their attempt to relitigate sanctionability of the conduct was beyond the scope of the remand directive and thus barred by the law of the case rule.[36]

(c) The Morris, Manning attorneys argue that this Court lacked jurisdiction to render the *Harkleroad* decision because an application for discretionary appeal is required for appeals from the grant or denial of OCGA § 9-15-14 motions,[37] and no such application was filed. Jurisdiction of the direct appeal of the OCGA § 9-15-14 award in *Harkleroad* was accepted under the authority of *Haggard v. Bd. of Regents*,[38] as jurisdiction of the underlying claim was before the court

---

[36] See *Eastgate Assoc. v. Piggly Wiggly Southern*, 200 Ga. App. 872, 873 (1) (410 SE2d 129) (1991) (any direction awarded by the appellate court shall be carried into full effect by the court below).

[37] OCGA § 5-6-35 (a) (10); *Fabe v. Floyd*, 199 Ga. App. 322 (405 SE2d 265) (1991).

[38] 257 Ga. at 526 (4) (a), supra.

in *Stringer*.

6. The last contention is that the court erred in including certain fees and expenses in its award to the Harkleroad firm and Harkleroad.

The award included fees charged by Schwall in pursuing the rejected prejudgment-interest claim, in prosecuting appeals to this Court, in pursuing claims against Stringer in federal bankruptcy court, and in post-judgment collection efforts.

The foregoing fees were not recoverable under OCGA § 9-15-14. (a) A trial court must limit sanctions to those fees incurred because of sanctionable conduct,[39] so fees incurred in pursuing an unsuccessful claim would not be recoverable. (b) The Morris, Manning attorneys cannot be liable for fees incurred in post-judgment collection as they had withdrawn long before that phase of the litigation. (c) OCGA § 9-15-14 does not authorize an award for the expenses of litigation incurred during proceedings before an appellate court of this state.[40] (d) OCGA § 9-15-14 does not authorize an award for attorney fees or expenses for proceedings before a federal bankruptcy court; application of the statute is limited to courts of record where the Georgia Civil Practice Act applies.[41]

The judgment in the main appeal and cross-appeals is reversed, and the cases are remanded for the court to fashion a sanctions award consistent with this opinion.

*Judgment reversed and cases remanded. McMurray, P. J., and Smith, J., concur.*

DECIDED MARCH 20, 1998 ▮▮▮▮▮▮▮

*Harkleroad & Hermance, Donald R. Harkleroad, Emory A. Schwall*, for Harkleroad et al.

W. Kenneth Stringer, *pro se.*

*Bondurant, Mixson & Elmore, Jeffrey O. Bramlett, Michael B. Terry*, for Morris, Manning & Martin et al.

---

[39] See *Duncan v. Cropsey*, supra, 210 Ga. App. at 815 (2).

[40] *Dept. of Transp. v. Franco's Pizza &c.*, 200 Ga. App. 723, 727 (5) (409 SE2d 281) (1991), overruled on other grounds, *White v. Fulton County*, 264 Ga. 393, 394 (1) (444 SE2d 734) (1994).

[41] *Contract Harvesters v. Clark*, 211 Ga. App. 297, 299 (2) (439 SE2d 30) (1993).